IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AT ROCK ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal No. 07-40081 |
| | ) |
| YVES LEBON, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS**

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and hereby responds to defendant Lebon's Motion To Suppress Evidence.

Lebon claims that (1) the initial stop of his vehicle by Illinois State Police (ISP) was without justification, (2) the stop was unreasonable in duration due to questioning unrelated to the purposes of the stop, and (3) the search of the trunk was outside the scope of Lebon's consent.

Each of these contentions is unavailing and should be rejected. *First*, Lebon was lawfully stopped because the trooper had probable cause to believe the defendant was committing a traffic violation – unlawful lane usage. *Second*, after the traffic stop was concluded, Lebon consented to continue talking with Trooper Fratzke. *Finally*, Lebon willingly consented to the search of the trunk and never limited the scope in any way.

**I.      FACTUAL BACKGROUND**

Lebon is charged in this case with possession of 119 kilograms of cocaine with intent to distribute and improper entry by an alien.

On August 22, 2007, ISP Trooper Fratzke observed Lebon's car, a Nissan with California license plates, weaving in the roadway. Trooper Fratzke observed the Nissan weave from the center line to the shoulder of the roadway before he activated his in-car video camera. As the Nissan approached milepost 18.5, it crossed the white line of the shoulder and weaved back onto the roadway in violation of 625 ILCS 5/11-709 (improper lane usage).

Trooper Fratzke initiated a traffic stop, approached the Nissan, and explained to the driver and sole occupant, Lebon, why he stopped him. Lebon held up a water bottle and stated he had been reaching into his cooler which was located on the front passenger seat. As Lebon handed Trooper Fratzke his Quebec driver's license, Lebon's hand was shaking and he appeared overly nervous. Lebon provided the rental agreement listing Lebon as the renter of the Nissan. The Nissan was rented in California on August 18, 2007 and was to be returned to California seven days later on August 25, 2007.

Lebon informed Trooper Fratzke that he is a truck driver and his truck broke down in Los Angeles. He further stated that it was going to take 10-12 days to fix. Trooper Fratzke asked Lebon why he was driving from California to Quebec when it would have been cheaper to fly. Lebon advised that his boss told him to rent a car.

Trooper Fratzke went back to his vehicle, radioed for a driver's license and criminal history check, then wrote Lebon a written warning for improper lane use. He then approached the front passenger window of the Nissan, explained the written warning, and gave the warning to Lebon. Lebon signed the warning and was given a copy. Trooper Fratzke then advised Lebon to have a safe trip and began walking back to his squad.

Trooper Fratzke then reapproached the front passenger window and asked Lebon if he could ask him a couple questions. Lebon stated yes. When asked why he rented a car for one week when

it takes four days to drive to Quebec only to spend the night and begin driving back, Lebon replied it depends if his truck is ready. When whether it would have been less expensive to stay in California, Lebon replied that it was too expensive to stay in a hotel and that breakfast was expensive in L.A.

Trooper Fratzke then asked Lebon if he had anything illegal in the car. When Lebon stated "no," Fratzke asked for permission to search the trunk and Lebon replied "ya." Lebon opened the trunk with his key remote. In the trunk, Trooper Fratzke observed a new pillow still wrapped in plastic, a blanket covering part of a black duffle bag, and a boxed tent. Trooper Fratzke walked back up to the front passenger window and asked Lebon again, "so I can search your trunk real quick, I can search your trunk?" Lebon replied "OK." Trooper Fratzke returned to the trunk and pulled the blanket back and observed other black duffle bags. He felt a hard brick shaped object inside the top duffle bag. Trooper Fratze opened the bag and saw several vacuum sealed kilo size bricks of cocaine in the bag. Trooper Fratzke had Lebon step out of his car and placed him under arrest.

Trooper Fratzke conducted a free-air sniff of the vehicle using his drug-detecting dog, Viper. Viper gave a positive alert to the odor of narcotics in the trunk. Trooper Fratzke completed a search of the trunk and located 119 kilo-sized bricks of cocaine, Lebon's Canadian passport, and a ticket stub for Yves Lebon's August 18, 2007, flight from Vermont to L.A.

## II.   ARGUMENT

### A.   The Initial Traffic Stop Was Lawful

Lebon's initial claim, that the traffic stop was unlawful, has no merit because he was stopped after Trooper Fratzke witnessed a violation of the Illinois Vehicle Code, specifically unlawful lane usage. 625 ILCS 5/11-709. "[A] traffic violation – however minor – creates probable cause to stop the driver of a vehicle." United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002). There is no

doubt that based upon Trooper Fratzke's observation of Lebon's vehicle crossing the shoulder line, he was authorized to stop the driver for improper lane usage. United States v. Fiala, 929 F2d 285, 288 (7th Cir. 1991)(troopers were authorized to stop vehcile for unlawful lane usage when vehicle served off the roadway).

B. <u>After the Conclusion of the Traffic Stop, The Defendant Was Not Unlawfully Detained, But Voluntarily Consented to Continue Speaking With Fratzke</u>

The defendant was stopped on probable cause that he had committed a traffic violation, unlawful lane usage. Trooper Fratzke issued a written warning to the defendant, and told him "we'll get you out of here" and to "have a safe trip," and began walking back to his squad car. Trooper Fratzke then returned to the defendant's car and asked him if he could ask him "a few more questions," and the defendant agreed that he could. The traffic stop, and resulting detention, was over, but the defendant voluntarily agreed to continue speaking to Fratzke.

Not every encounter between citizens and police involves a seizure that implicates the Fourth Amendment: "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen." *United States v. Childs*, 277 F.3d 947, 950 (7th Cir. 2002) (en banc) (*quoting Florida v. Bostick*, 501 U.S. 429, 434 (1991)); *United States v. Broomfield*, 2005 WL 1791307 at *2 (7th Cir. July 29, 2005). "[T]he law is well established that if an officer asks rather than commands, the person accosted is not seized, and so the protections of the Fourth Amendment do not attach." *United States v. Stribling*, 94 F.3d 321, 323-24 (7th Cir. 1996) *(quoting United States v. DeBerry*, 76 F.3d 884, 885 (7th Cir. 1996)); *see also United States v. Moore*, 375 F.3d 580, 584 (7th Cir. 2004).

Because Fratzke told the defendant that the stop was completed, and the defendant agreed to remain and answer "a few more questions," the encounter between the two was a consensual encounter that does not trigger Fourth Amendment scrutiny.

The defendant's consensual encounter with Trooper Fratzke continued when Fratzke asked the defendant if he could look in his trunk. The defendant agreed not once, but twice, to the search and opened the trunk to assist Trooper Fratzke's request.

Though the discussion between the defendant and Fratzke after the conclusion of the traffic stop was a purely consensual encounter beyond Fourth Amendment scrutiny, even if it were not, and as the defendant claims he was still being detained, the brief additional time until Fratzke located the cocaine was not unreasonable.

Lebon does not specify which questions he finds objectionable, but presumably he complains about Fratzke's questions concerning the trip itinerary. This complaint is without legal merit, since it is well established that the defendant need not be released at the earliest practicable moment after the completion of a traffic stop for his detention to be reasonable under the Fourth Amendment. In *United States v. Childs*, 277 F.3d 947 (7th Cir.), *cert. denied*, 537 U.S. 829 (2002)*,* the Seventh Circuit considered whether a police officer could reasonably extend the duration of the stop by asking questions during a traffic stop based upon probable cause. This Court found that questions were neither a search or a seizure, and held that the "custody's . . . duration must be 'reasonable' under the fourth amendment." 277 F.3d at 952. "[A]rrested persons (unlike those stopped at checkpoints, or on reasonable suspicion) need not be released as quickly as possible." *Id*. at 953.

The *Childs* court also stated that "because probable cause supported this stop, neither the driver nor Childs [the passenger] had a right to be released the instant the steps to check license, registration and outstanding warrants, and to write a ticket had been completed." *Childs* at 277 F.3d

at 953. The *Childs* court also found that the minute or so added to the minimum time in which those steps were accomplished "was short - not nearly enough to make the seizure 'unreasonable.'" *Id.*

> What the Constitution requires is that the entire process remain reasonable. Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention. They do not signal or facilitate oppressive police tactics that may burden the public -- for all suspects (even the guilty ones) may protect themselves fully by declining to answer. Nor do the questions forcibly invade any privacy interest or extract information without the suspects' consent.

*Id.* at 954.

In *United States v. Carpenter*, 406 F.3d 915 (7th Cir. 2005), the Seventh Circuit again emphasized the holding in *Childs* – when a traffic stop is made with probable cause, the issue is whether the overall detention is reasonable. In *Carpenter*, the defendant had been stopped on probable cause for running a red light. There was a dispute between the parties about whether a drug dog did a free air sniff during the processing of the traffic ticket, or whether the wait for the dog prolonged the stop by around 5 minutes. The Seventh Circuit held that, even if the defendant had been detained for 5 minutes beyond the conclusion of the traffic stop to await the arrival of a drug-detecting dog, it was a "modest incremental delay for a person already lawfully arrested [, and] cannot be called unreasonable . . . ." *Carpenter* at 917.

Not only were Trooper Fratzke's questions of the type specifically allowed by law, any supposed delay occasioned by the questions was not unreasonable by Fourth Amendment standards.

    C.    <u>The search was within the scope Lebon's consent</u>

Lebon's final claim is that although he consented to the search of his trunk, Trooper Fratzke somehow exceeded the scope of Lebon's consent by searching inside the duffle bag in the trunk. There is no evidence that Lebon limited the scope of his consent in any manner. Had Lebon intended

to limit the scope of his consent to search the trunk in any manner, the burden was upon him to do so. *United States v. Patterson*, 97 F.3d 192, 195 (7th Cir. 1996), *United States v. Baker*, 78 F. 3d 1241, 1245 (7th Cir. 1996).

WHEREFORE, the government respectfully requests that defendant Lebon's Motion To Suppress Evidence be denied.

    Respectfully submitted,

    Rodger A. Heaton
    United States Attorney

BY: __/s/ Sara Darrow_____
    Sara Darrow
    Assistant United States Attorney
    1830 Second Avenue, Suite 320
    Rock Island, Illinois 61201
    Telephone (309) 793-5884

## CERTIFICATION OF SERVICE

I HEREBY CERTIFY that on December 14, 2007, I electronically filed the foregoing Government's Response to Defendant's Motion to Suppress with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participant: Michael D. Krejci

    /s/ Sara Darrow_____
    SARA DARROW